IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOHN LEE RAY                                                                                           PLAINTIFF

v.                                    CIVIL NO.         3:10-CV-03023

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff initially filed an application for Disability Insurance Benefits under Title II of the Social Security Act on March 13, 2007 (T.34,93-95). The Social Security Administration denied his claim initially and at reconsideration (T.34,43-45,46-47,48-49). Plaintiff timely requested a hearing on July 30, 2007, and a hearing was held on December 17, 2008 (T.9-28,50-51). Following the hearing an adverse decision was rendered on April 22, 2009 (T.34-42). Plaintiff requested that the Appeals Council review the adverse decision of the ALJ on June 25, 2009 (T.5 and on January 4, 2010, the Appeals Council issued a decision denying Plaintiff's

request for review and accepting the ALJ's conclusion that he was not disabled (T.1-3).

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)©.  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve

-2-

consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Applicable Facts

#### A. Relevant Personal Facts:

Plaintiff is a sixty-two (62) year old male whose date of birth is January 13, 1948 (T.40,93). Plaintiff has a high school education and his past relevant work includes employment as a firefighter and an artist (T.40,101,112-115,122,139-142,157-160).

Plaintiff's filed for disability on March 21, 2007 with an onset date of January 9, 1991 (T. 93).  The alleged onset date was subsequently amended to April 29, 1990 (T.105, 121). Plaintiff first alleged disability due to degenerative disc disease in the cervical and lumbar spine, low back pain with muscle spasms, upper back pain, neck pain, shoulder pain, left arm pain, leg and foot pain, hypertension, and arthritis (T.121,147,152,174, 180,182,185). The Plaintiff contended in July 2007 that he had a change of condition due to degenerative disc

disease in the cervical and lumbar spine, low back pain with muscle spasms, upper back pain, neck pain, shoulder pain, left arm pain, leg and foot pain, hypertension, and arthritis (T. 165-186).

    **B. Relevant Medical Facts**

On June 19, 1990 an MRI showed degenerative disc disease at L3-L4, L4-L5, and L5-S1. A CT and myelography was performed which showed a large disc herniation to the disc space of the L4-L5. (T. 207-208).

In January 1991 a right L4-L5 partial hamilaminectomy[1], medial facetectomy[2], and microdiskectomy[3] was performed and on July 3, 1991 the Plaintiff was declared disabled and terminated from his duties as a firefighter for the city of Tulsa.

On September 15, 1992 the Plaintiff saw Dr. Stewart T. Hinkle and stated that "he had only one episode of right leg pain since January 1991 and experienced 'muscle spasms' on two occasions since the surgery. (T. 208).

On March 18, 1993 the Plaintiff was awarded 35% permanent partial disability under the Oklahoma Workman's Compensation Act. (T. 217-218).

In November 1993 the Plaintiff was seen by Dr. Hayes for low back pain. A MRI was performed which showed a herniated disc L5-S1 with narrowed disc at L4-L5 and some degenerative changes at L3-L4. A fusion was recommended only if the Plaintiff had

---

    [1]Surgical removal of one side of the vertebral lamina.

    [2]surgical removal of a facet, particularly the articular facet of a vertebra.

    [3]surgical removal of disk fragments from a herniated disk,

incapacitating and intolerable pain.  The Plaintiff elected to have three steroid injections (T. 208).

On April 17, 1996 the Plaintiff was seen by the University Occupational Health Sciences. The Plaintiff had a series of three epidural steroid injections in 1994 with minimal relief of symptoms.  The Plaintiff indicated that he was able to do the activities of daily living (T. 208) and that he still enjoyed fishing, and playing the guitar at church and painting. The Plaintiff acknowledged that he had gone as far as Chicago to exhibit his painting. (T. 209). The x-rays of the Plaintiff's spine at the time showed "hypertrophic degenerative changes at L4-L5 with disc narrowing and small vacuum disc indicating degenerative disc disease, otherwise the veterbral bodies, disc spaces, and perivertebral soft tissues are normal.  (T. 210).

The examining doctor also noted that on "physical examination we were unable to rate the back examination due to the inconsistency of the results specifically the patient was demonstrating less movement during examination that at other times when he was distracted, i.e. when he was getting dressed and when we focused our attention on other systems, therefore we were unable to include the physical examination of the back due to the invalidity of the test results".  (T. 210).   The opinion was that the Plaintiff had reached a static condition regarding his back. (Id.).

On October 28, 2006 the Plaintiff was seen by Dr. Kenneth R. Trinidad, D.O. who felt that the Plaintiff condition had stabilized and that maximum medical recovery had been achieved. (T. 213).  Dr. Trinidad felt that the Plaintiff's condition had changed since March 1993 and increased his disability rating from 35% to 45%.

In 2006 the Plaintiff underwent a 3-level posterior laminectomy and a single-level cervical fusion. (T. 243, 350, 353).

In a radiology report dated January 8, 2007, Mary Jo Henry, chief radiologist at the VA Hospital, offered the following impression: 1. Patient status post anterior fusion of the C4 and C5 vertebra. Spinous processes of C3 through C5 have been removed in the antrum.  2. Approximately 3.5 cm anterior subluxation of C4 in relation to C5. 3. Straightening of the cervical spine with loss of the normal lordotic curve. 4. Multilevel disc space narrowing throughout the cervical spine with findings most pronounced at C5/6 and C6/7 (T.263).

On March 12, 2007 Dr. Runnels also saw Plaintiff and reported that "his neck and arm pain may be worse" (T.366).  Dr. William C. Mills, a staff radiologist at the VA Hospital, offered the following impression: Minimal dextroscoliosis, Significant displacement narrowing in osteophytic change at L4-L5. There is sclerosis of the endplates compatible with discogenic disease. Degenerative changes involving the lower lumbar facet joints bilaterally from L3 through S1. The SI joints are normal. There are no lytic or blastic lesions present (T.261).

On March 15, 2007 Dr. Todd W. Logsdon, a radiologist at Arkansas MRI Services took an MRI of Plaintiff's cervical spine (T. 252).

Dr. Jesse F. Walker, a staff physician at the VA Hospital, saw Plaintiff on March 27, 2007 for complaints of hypertension, chronic neck pain and carpal tunnel syndrome and offered the following assessment: Essential hypertension, Insomnia, Depression, Musculoskeletal pain and Hypercholesterolemia, Paresthesias and Spinal stenosis, radiculopathy (T.354).

On June 4, 2007 State agency medical consultant Alice Davidson, M.D., noted degenerative disc disease and found that as of June 30, 1991, Plaintiff retained the capacity to perform light work with occasional stooping and crouching (Tr. 29, 230-236). State agency medical consultant Bill Payne, M.D., concurred with the assessment of Dr. Davidson (Tr. 30,

240).

Dr. Martinson's August 2008 consultative examination revealed no focal motor weakness in either his upper or lower extremities (Tr. 243). X-rays of the lumbar spine showed loss of disk height at L4-5 and marginal spurring at LS-S1 (Tr. 244). There were degenerative changes at L4-5 (Tr. 251). Consultative examiner Dr. Martinson concluded: "Utilizing the AMA Guidelines (Fifth Edition) I can assign him a 32% Total Body Impairment Rating based on the physical abnormalities in his cervical and lumbar spine" (Tr. 244). Consultative examiner Dr. Martinson completed an August 5, 2008, form (Medical Source Statement of Ability to do Work-Related Activities (Physical)) that specified exertional and nonexertional functional limitations based on both lumbar and cervical spine impairments (Tr. 245-250). Dr. Martinson specified, within a reasonable degree of medical probability, that the specified limitations were first present in 1994 (Tr. 250).

**C. ALJ's Decision:**

The ALJ held that the degenerative disc disease in Plaintiff's lumbar spine was a severe impairment (Tr. 36). The ALJ found that, through the date last insured, Plaintiff did not have an impairment "or combination of impairments" that met or equaled a listed impairment (Tr. 37). The ALJ determined that as of Plaintiff's date last insured, Plaintiff could perform light work, with occasional crouching and stooping (Tr. 37). Plaintiff could lift/carry twenty pounds, push/pull within those same limitations, and stand/walk for six hours in an eight-hour day (Tr. 37). Plaintiff could frequently climb, balance, kneel, and crawl; occasionally stoop and crouch (Tr. 37).

Plaintiff could not return to his past relevant work (Tr. 40). The vocational expert

identified jobs that an individual with the specified age, education, work experience, and residual functional capacity could perform: production worker (300,000 nation; 6,300 Arkansas); poultry eviscerator (44,000 nation; 5,000 Arkansas); and cashier (1,160,000 nation; 4,000 Arkansas) (Tr. 41, 201-202). The ALJ considered the vocational expert's testimony and concluded that Plaintiff was "capable of making a successful adjustment to work that existed in significant numbers in the national economy" (Tr. 41). Accordingly, the ALJ denied Plaintiff's application at step five of the sequential evaluation process (Tr. 41) and determined that the Plaintiff was not disabled as of his June 30, 1991, date last insured (Tr. 41).

**IV.    Discussion**:

On June 19, 1990 an MRI showed degenerative disc disease at L3-L4, L4-L5, and L5-S1. A CT and myelography was performed which showed a large disc herniation to the disc space of the L4-L5. (T. 207-208). In January 1991 a right L4-L5 partial hamilaminectomy[4], medial facetectomy[5], and microdiskectomy[6] was performed and on July 3, 1991 the Plaintiff was declared disabled and terminated from his duties as a firefighter for the city of Tulsa.

Plaintiff's date last insured was June 30, 1991 (Tr. 86). Plaintiff was forty-three years old as of his date last insured (Tr. 86, 93). The relevant analysis is whether Plaintiff was actually disabled prior to the date last insured. *See Potter v. Secretary of Health and Human Services*, 905 F.2d 1346, 1348-1349 (10th Cir. 1990). The ALJ had the unenviable job of trying to determine

---

[4]Surgical removal of one side of the vertebral lamina.

[5]surgical removal of a facet, particularly the articular facet of a vertebra.

[6]surgical removal of disk fragments from a herniated disk,

the Plaintiff's limitations as of the day on which the Plaintiff was last insured which was almost 16 years before Plaintiff filed for disability benefits.

The ALJ found that the Plaintiff's degenerative disc disease in the lumbar spine was a severe impairment (T. 36) but, through the date last insure, the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (T. 37).

The Plaintiff offered a great deal of evidence concerning the Plaintiff's condition after the expiration of date last insured (See Exhibit 11F, T. 253-377; Exhibit 12F, T. 378; Exhibit 13F, T. 379-381) but the Plaintiff had to establish disability prior to the expiration of benefits.

Generally "A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition." SSR 83-20, 1983 WL 31249, *1 (1983). *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (plaintiff must establish disability before expiration of insured status); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("we will only consider an individual's medical condition as of the date she was last insured"); *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (claimant required to show existence of disability prior to the expiration of insured status). As the ALJ noted there was no medical evidence that the Plaintiff complained of **cervical spine pain and/or upper extremity symptoms** prior to his date last insured on June 30, 1991. (T. 36).

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute

counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The ALJ fulfilled this obligation by obtaining a Physical Residual Functional Capacity Assessment by Dr. Alice Davidson on June 4, 2007. (T. 2300237).  The Date Last Insured was clearly designated on the report (T. 230) and clearly understood by Dr. Davidson because in her additional comments Dr. Davidson stated that the Plaintiff was "43 y/o at DLI of 6/91." (T. 237). She also specifically noted the Range of Motion for the Plaintiff subsequent to his lumbar surgery.

Dr. Davidson determined that as of June 30 1991 the Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk and sit  for 6 hours in an 8 hour workday.  She also determined that he had no restrictions on pushing or pulling. (T. 231). Dr. Davidson's findings were approved by Dr. Bill Payne on July 12, 2007.

The Plaintiff was seen on August 5, 2008 by Dr. Alice Martinson who found that the Plaintiff did have "clinical evidence of a left C5 sensory neuropathy and findings in the lower extremities suggestive of the residuals of cervical myelopathy. (T. 244).  Dr. Martinson did note that the Plaintiff's deep tendon reflexes were normal and symmetrical and he had no focal motor weakness in his upper extremities, his seated root test was negative bilaterally and the fabere test was negative. (T. 243).  Dr. Martinson still felt that the plaintiff could lift 10 pounds continuously and 20 pounds occasionally (T. 245) but that he could only sit for up to 1 hour and stand/walk from 10 to 30 minutes without interruption but could still sit for up to 6 hours in and 8 hour workday but could only stand/walk up to 1 to 2 hours in an 8 hour workday. (T. 246).  The

crucial finding by Dr. Martinson however was that the Plaintiff's current disabilities did not occur until 1994. (T. 250).

Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, in helping to elucidate a medical condition during the time for which benefits might be rewarded. *See Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir.1989)( subsequent reports reveal Fowler's condition to be a seriously limiting and deteriorating one. Most notably, in February, 1985, less than one year after the expiration of Fowler's insured status, physicians at the University of Iowa recommended against any surgery because of Fowler's precarious physical condition.); *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir.1985). But see Milton v. Schweiker, 669 F.2d 554, 555 n. 1 (8th Cir.1982) (per curiam) (noting that a heart attack subsequent to the expiration of insured status without evidence of a heart condition during the relevant time period cannot serve as a basis for recovering disability benefits). New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir.1997). *Moore v. Astrue,* 572 F.3d 520, 525 (C.A.8 (Ark.),2009)

The Plaintiff contends that the ALJ failed to consider or discuss the Plaintiff's diagnosed "insomnia, carpal tunnel syndrome, depression, anxiety or post traumatic stress disorder." (ECF No. 8, p. 15) or consider them in combination with his DDD.  The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs*., 872 F.2d 810, 812 (8th Cir. 1989).   In this case, however, there is absolutely no evidence that any of these alleged impairments existed prior to June 30, 1991 and the ALJ was correct not

to consider them.

The ALJ also relied on a medical report prepare April 17, 1996 that referred to a medical record of Dr. Stewart Hinkle.  On September 15, 1992 Dr. Kinlle stated that the Plaintiff told him that he had only one incidence of leg pain and two muscle spasms since his surgery in 1991 (T. 208).  The musculoskeletal exam on April 17, 1996 revealed that "DTRs +2 over all extremities, sensory intact.  Muscle strength 5/5."  The range of motion was noted and the Plaintiff's "gait was normal." (T. 210).

The ALJ's determination that the Plaintiff was not disabled within the meaning of the Act is supported by substantial evidence.

**RFC:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

Plaintiff cannot return to his past relevant work as a firefighter (Tr. 40). Born in 1948, Plaintiff completed one year of college (Tr. 93, 127). Plaintiff was forty-three years old as of his date last insured of June 30, 1991 (Tr. 86-93) The vocational expert identified jobs that such an individual could perform: production worker (300,000 nation; 6,300 Arkansas); poultry eviscerator (44,000 nation; 5,000 Arkansas); and cashier (1,160,000 nation; 4,000 Arkansas) (Tr. 41, 201-202). The ALJ noted, in the alternative, that even if Plaintiff were restricted to sedentary work, grid rule 201.28 would direct a determination that Plaintiff was not disabled as of his date last insured (Tr. 41-42). The ALJ considered the vocational expert's testimony and concluded that Plaintiff was "capable of making a successful adjustment to work that existed in significant numbers in the national economy" (Tr. 41).

**Credibility:**

The ALJ found that the Plaintiff's medical condition, as it existed at the date of last coverage, "could reasonable be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 38). The ALJ cited Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) acknowledging that a determination of the Plaintiffs's credibility was required.(Tr. 38).

Plaintiff stated that he still had a "great pain level" following his surgery, but noted that "it was less because they took the disc out" (T.12). He reported that he had difficulty walking

following the surgery and that he "had to take small, tiny steps because it was painful" (T.12). Plaintiff estimated that he could walk "up to about a half [of] a mile" following the surgery and acknowledged that he was encouraged to do so by his physician (T.13). Plaintiff emphasized that he "had the pain all [of] the time", and that he would walk and lie down to help alleviate the pain (T.15). Plaintiff acknowledged that he had difficulty with muscle spasms following his surgery, and noted that he took Flexeril for the muscle spasms (T.15,16). He explained that for the "first two weeks after surgery, I had muscle spasms.... and I had someone put a mattress on the floor, so I slept on the floor and I crawled -- to the bathroom and crawl[ed] to the refrigerator and mostly just laid there and cried" (T.15). As pointed out above the Plaintiff told Dr. Hinkle on September 15, 1992 that he had only one episode of leg pain and two muscle spasms since his surgery in 1991. (T. 208).

Plaintiff opined that "the only hobby I guess I've ever had is painting" (T.17). The court notes however that on his Social History given on April 17, 1996 he listed painting, fishing and playing the guitar at church. (T. 209). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Taylor v. Chater*, 118 F.3d 1274, 1277 (8th Cir. 1997)

In the Disability Report filed by the Plaintiff he indicated that he sat for 3 hours per day and reached for 4 hours per day. (T. 122). The Plaintiff also acknowledged that he could prepare his own meals, wash dishes and laundry (T. 131). He went outside daily, could take short walks, drive a car, that he could shop and handle his own money. (T. 132). *See Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir.1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes,

watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain). On April 17, 1996 the Plaintiff acknowledged that he had gone as far as Chicago to exhibit his painting. (T. 209). In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."

Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ).

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 18th day of March 2011.

　　　　　　　　　　　　　　　　　　*/s/ J. Marschewski*
　　　　　　　　　　　　　　　　　　HONORABLE JAMES R. MARSCHEWSKI
　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES MAGISTRATE JUDGE